# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRUCE PATRICK HANEY,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>Dr. HTAY, et al.,<br><br>　　　　Defendants. | **Case No. 1:16-cv-00310-AWI-SKO (PC)**<br><br>**FINDINGS AND RECOMMENDATION TO DISMISS CASE WITH PREJUDICE FOR FAILURE/INABILITY TO STATE A COGNIZABLE CLAIM**<br><br>**(Doc. 11)**<br><br>**TWENTY-ONE (21) DAY DEADLINE** |

## FINDINGS

### A. Background

Plaintiff, Bruce Patrick Haney, is a prisoner in the custody of the California Department of Corrections and Rehabilitation ("CDCR"). Plaintiff is proceeding *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff filed the Complaint in this action on March 7, 2016. (Doc. 1.) It was screened and dismissed with leave to amend. (Doc. 8.) On April 19, 2017, Plaintiff filed the First Amended Complaint, which is before the Court for screening. (Doc. 11.)

### B. Screening Requirement

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally frivolous, malicious, fail to state a claim upon which relief may be granted, or that seek monetary

1

relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2); 28 U.S.C. § 1915(e)(2)(B)(i)-(iii). If an action is dismissed on one of these three basis, a strike is imposed per 28 U.S.C. § 1915(g). An inmate who has had three or more prior actions or appeals dismissed as frivolous, malicious, or for failure to state a claim upon which relief may be granted, and has not alleged imminent danger of serious physical injury does not qualify to proceed *in forma pauperis*. *See* 28 U.S.C. § 1915(g); *Richey v. Dahne*, 807 F.3d 1201, 1208 (9th Cir. 2015).

Section 1983 "provides a cause of action for the deprivation of any rights, privileges, or immunities secured by the Constitution and laws of the United States." *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983). Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights conferred elsewhere. *Graham v. Connor*, 490 U.S. 386, 393-94 (1989).

To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the alleged violation was committed by a person acting under the color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Ketchum v. Alameda Cnty.*, 811 F.2d 1243, 1245 (9th Cir. 1987).

**C.     Summary of the First Amended Complaint ("FAC")**

Plaintiff complains of acts that occurred while he was housed at Wasco State Prison ("WSP"). Plaintiff seeks monetary damages from Defendants Dr. S. Htay, Dr. A. Klang, Dr. A. Youssef, and Appeals Coordinator ("A/C") F. Feliciano. Plaintiff identifies two claims in the First Amended Complaint (FAC): (1) against Dr. Htay for taking him off of the ADA list which allowed him to be transferred to Calpatria State Prison ("CAL") in deliberate indifference to Plaintiff's serious medical needs (Doc. 11, pp. 3-4, 5); and (2) against A/C Feliciano, Dr. Klang, and Dr. Youssef for their involvement in processing and ruling on Plaintiff's inmate appeals -- against A/C Feliciano for the handling of Plaintiff's emergency inmate appeal (to avoid the transfer), and against Dr. Klang and Dr. Youssef for their rulings on Plaintiff's health-care appeal attempting to be placed back on the ADA list (*id.*, pp. 4, 6-8).

As discussed in greater detail below, despite having been given the applicable legal standards for his claims in the prior screening order, Plaintiff fails and appears unable to state a

2

cognizable claim. In fact, Plaintiff has apparently invented or misrepresented a number of facts in the FAC attempting to make his claims cognizable. Plaintiff thus appears unable to state a cognizable claim, and so as not to encourage fabrication, this action is properly dismissed with prejudice.

**D.  Pleading Requirements**

   **1.  Federal Rule of Civil Procedure 8(a)**

"Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions," none of which applies to section 1983 actions. *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 512 (2002); Fed. R. Civ. Pro. 8(a). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. Pro. 8(a). "Such a statement must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz*, 534 U.S. at 512.

Violations of Rule 8, at both ends of the spectrum, warrant dismissal. A violation occurs when a pleading says too little -- the baseline threshold of factual and legal allegations required was the central issue in the *Iqbal* line of cases. *See, e.g., Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937 (2009). The Rule is also violated, though, when a pleading says *too much*. *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.,* 637 F.3d 1047, 1058 (9th Cir.2011) ("[W]e have never held -- and we know of no authority supporting the proposition -- that a pleading may be of unlimited length and opacity. Our cases instruct otherwise.") (citing cases); *see also McHenry v. Renne*, 84 F.3d 1172, 1179-80 (9th Cir.1996) (affirming a dismissal under Rule 8, and recognizing that "[p]rolix, confusing complaints such as the ones plaintiffs filed in this case impose unfair burdens on litigants and judges").

Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Iqbal*, 556 U.S. at 678, quoting *Twombly*, 550 U.S. at 555. Factual allegations are accepted as true, but legal conclusions are not. *Iqbal*, at 678; *see also Moss v. U.S.*

*Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009); *Twombly*, 550 U.S. at 556-557.

While "plaintiffs [now] face a higher burden of pleadings facts . . . ," *Al-Kidd v. Ashcroft*, 580 F.3d 949, 977 (9th Cir. 2009), the pleadings of pro se prisoners are still construed liberally and are afforded the benefit of any doubt. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). However, "the liberal pleading standard . . . applies only to a plaintiff's factual allegations," *Neitze v. Williams*, 490 U.S. 319, 330 n.9 (1989), "a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled," *Bruns v. Nat'l Credit Union Admin.*, 122 F.3d 1251, 1257 (9th Cir. 1997) quoting *Ivey v. Bd. of Regents*, 673 F.2d 266, 268 (9th Cir. 1982), and courts are not required to indulge unwarranted inferences, *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). The "sheer possibility that a defendant has acted unlawfully" is not sufficient, and "facts that are 'merely consistent with' a defendant's liability" fall short of satisfying the plausibility standard. *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949; *Moss*, 572 F.3d at 969.

Further, "repeated and knowing violations of Federal Rule of Civil Procedure 8(a)'s 'short and plain statement' requirement are strikes as 'fail[ures] to state a claim,' 28 U.S.C. § 1915(g), when the opportunity to correct the pleadings has been afforded and there has been no modification within a reasonable time." *Knapp v. Hogan*, 738 F.3d 1106, 1108-09 (9th Cir. 2013).

## DISCUSSION

**A.     Plaintiff's Claims**

   **1.     Deliberate Indifference to Serious Medical Needs**

Prison officials violate the Eighth Amendment if they are "deliberate[ly] indifferen[t] to [a prisoner's] serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "A medical need is serious if failure to treat it will result in '"significant injury or the unnecessary and wanton infliction of pain."'" *Peralta v. Dillard*, 744 F.3d 1076, 1081-82 (2014) (quoting *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir.2006) (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir.1992), overruled on other grounds by *WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir.1997) (en banc)).

4

To maintain an Eighth Amendment claim based on medical care in prison, a plaintiff must first "show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain. Second, the plaintiff must show the defendants' response to the need was deliberately indifferent." *Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012) (quoting *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quotation marks omitted)).

"Indications that a plaintiff has a serious medical need include the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic or substantial pain." *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014) (citation and internal quotation marks omitted); *accord Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012); *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000). For screening purposes, the spurring and arthritic changes in Plaintiff's lower spine are accepted as serious medical needs.

Deliberate indifference is "a state of mind more blameworthy than negligence" and "requires 'more than ordinary lack of due care for the prisoner's interests or safety.'" *Farmer v. Brennan*, 511 U.S. 825, 835 (1994) (quoting *Whitley*, 475 U.S. at 319). Deliberate indifference is shown where a prison official "knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id.*, at 847. Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir.2004). "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" *Id.* at 1057 (quoting *Farmer*, 511 U.S. at 837). "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'" *Id.* (quoting *Gibson v. County of Washoe, Nevada*, 290 F.3d 1175, 1188 (9th Cir. 2002)).

In his first claim, (Doc. 11, pp, 3-5), Plaintiff alleges that, on May 15, 2015, he was transferred to WSP from the Los Angeles County Jail. Eleven days after arriving, Plaintiff was

medically examined, x-rays were taken, and Plaintiff was placed on "the Americans with Disabilities (ADA) list due to lower spinal issues." On June 1, 2015, Plaintiff was seen by Dr. Htay who was allegedly aware of Plaintiff's condition, but without examination, told Plaintiff that she was removing Plaintiff from the ADA list. Although Dr. Htay refused to acknowledge Plaintiff's x-rays which showed spurring and arthritis in his lower spine dating back to 2004, at Plaintiff's request, she ordered x-rays to be performed before Dr. Htay would remove Plaintiff from the ADA list.

Plaintiff further alleges that x-rays Dr. Htay ordered were not taken until September 18, 2015; they revealed spurring and arthritic changes in Plaintiff's lower spine. Plaintiff alleges that on September 16, 2015, without Plaintiff's knowledge, Dr. Htay nonetheless Plaintiff from the ADA list, which allowed for his transfer from WSP to CAL. On October 15, 2015, Plaintiff was subjected to an 8-hour bus-ride from WSP to CAL. Plaintiff also has a prostate condition which causes him to have mobility problems and to "constantly urinate." Plaintiff alleges he was subjected to a health and safety risk on the bus-ride to CAL since he had to constantly stand and walk to the bathroom on the moving bus while his hands and legs were in chains. At CAL, further x-rays were taken of Plaintiff's back, which revealed that Plaintiff's spinal condition was even more severe than Plaintiff had thought. Since CAL was unable to accommodate Plaintiff's medical needs, Plaintiff was transferred to Salinas Valley State Prison ("SVSP"), where his back condition could be adequately addressed. On February 16, 2016, Plaintiff was subjected to a two-day twenty-hour bus-ride from CAL to SVSP. As a result of the bus rides for his transfers, Plaintiff alleges he now suffers severe back pain with spasms and a decrease of spinal strength which causes mobility issues -- which he attributes to his removal from the ADA list by Dr. Htay.

Nothing in Plaintiff's allegations shows any basis upon which to find that Dr. Htay knew that removing Plaintiff from the ADA list would subject Plaintiff to two transfers requiring extended bus-rides, which would pose a substantial risk of serious harm to Plaintiff. Plaintiff also fails to set forth anything about his condition which would have subjected him to a serious risk of harm at the prison, thereby causing his removal from the ADA list by Dr. Htay to amount to deliberate indifference. Plaintiff fails to state any allegations to show that when Dr. Htay

removed Plaintiff from the ADA list, she knew of the seriousness of Plaintiff's condition.

According to Plaintiff's allegations, the true seriousness of his condition was not revealed until x-rays which were taken at CAL after he left WSP and Dr. Htay's care. Plaintiff's discussion at his sole interview with Dr. Htay is insufficient, and Plaintiff does not point to specific information or diagnosis in his medical records which should have placed Dr. Htay on notice of the alleged severity of his condition. Further, Plaintiff was transferred a second time from CAL to SVSP, which involved a twenty-hour bus-ride, even after the severity of his condition was allegedly revealed to medical personnel at CAL. This should not have occurred if the premise of Plaintiff's alleged claim against Dr. Htay is accurate.

However, though Plaintiff did not attach exhibits to the FAC, he attached copies of his inmate appeals on this issue and the finding at each level of review to his original Complaint, (Doc. 1, pp. 13-25), which contradict Plaintiff's allegations against Dr. Htay in the FAC in a number of ways. Specifically, the Director's Level Review notes that Dr. Htay ("the PCP") saw Plaintiff on May 26, 2015, noting a physical exam with findings within normal limits, observed Plaintiff ambulate with a steady gait, Disability Placement Program Verification (DPPV) evaluation showed finding of mobility impairment not impacting placement ("DNM"), a CDCR 7410, Comprehensive Accommodation Chrono, was completed for a lower bunk, and the PCP ordered an x-ray of Plaintiff's lumbar spine. (*Id.*, p. 13.)

On June 1, 2015, the PCP evaluated Plaintiff's request for medication, reviewed the May 26, 2015 lumbar spine x-rays showing negative results, noted a history of morbid obesity which was noted as a possible contributing factor for Plaintiff's back pain, and determined that there was no medical indication for the strength of medication Plaintiff desired, but set out a plan of care including acetaminophen for pain management. (*Id.*) Several months later, the Inmate Correspondence and Appeal Branch ("ICAB") staff contacted the PCP regarding Plaintiff's current medical necessity for DNM status and lower bunk accommodation given the PCP's documentation of benign exam findings other than morbid obesity. (*Id.*) Thus, on September 16, 2015, the PCP noted re-evaluation of Plaintiff's DPPV status and accommodations, Plaintiff's exam was within normal limits, he was found to have no disability and was removed from DNM

status, and Plaintiff's CDCR 7410 was updated to show unrestricted housing. (*Id.*) On October 13, 2015, Plaintiff was evaluated by the PCP who completed a physical exam noting findings within normal limits, Plaintiff was observed to ambulate with a steady gait without assistive devices, and his pain medication was changed from acetaminophen to naproxen as Plaintiff stated acetaminophen was not helping with his pain. (*Id.*, p. 14.) Two days after this exam with normal findings, Plaintiff was transferred to CAL, where Plaintiff alleges subsequent x-rays revealed the seriousness of his condition. (*Id.*)

The exhibits to Plaintiff's original Complaint conflict with his allegations in the FAC that Dr. Htay removed Plaintiff from the ADA list without seeing the results of the x-rays she ordered on May 26, 2015 -- Plaintiff implies were most certainly positive for spurring and arthritis. On the contrary, the exhibits show that the x-rays Dr. Htay ordered on May 26, 2015, were not delayed four months as Plaintiff alleges, but were performed that same day with negative findings. "[A]llegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences" need not be accepted as true. *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) citing *Manzarek v. St. Paul Fire & Marine Ins. Co.,* 519 F.3d 1025, 1031 (9th Cir. 2008); *Sprewell v. Golden State Warriors,* 266 F.3d 979, 988 (9th Cir. 2001).

Plaintiff's allegations in the FAC confirm that it was not until radiology studies (which Plaintiff alleges were x-rays) were taken at CAL, that the seriousness of his back problem was revealed. However, the exhibits to Plaintiff's original complaint show that the radiology films available to Dr. Htay were x-rays, and not the MRI that was taken of Plaintiff's lumbar spine at CAL. (Doc. 1, pp. 33-35.) There is a difference between the levels of detail shown on x-rays versus MRIs, which is obvious from the length of their reports. (*Compare*, *id.,* at pp. 31, 32 (x-ray reports) with pp. 33-34 (MRI report).) Plaintiff is unable to state facts to establish that the x-rays which were available to Dr. Htay at WSP revealed the same issues as those reflected on the MRI taken of Plaintiff's spine at CAL. Finally, the version of events alleged in the FAC omit some key pieces of information which are revealed in the exhibits to Plaintiff's original

Complaint: (1) the PCP examined Plaintiff with findings within normal limits and ambulation with steady gait without assistive devices, and Plaintiff's pain medication was changed *a mere two days* before Plaintiff was transferred to CAL (*id.*, p. 14); and (2) Dr. Htay ordered a second set of x-rays of Plaintiff's lumbar spine on September 18, 2015, with findings of mild lumbar arthrosis and no fracture or subluxation (*id.*, p. 32). This does not show that Dr. Htay was deliberately indifferent to Plaintiff's condition when he was removed from the ADA list, or demonstrate that Plaintiff should not have been transferred from WSP to CAL.

Additional medical records that Plaintiff attached to his original Complaint likewise do not reveal information to show that Dr. Htay's decision to remove Plaintiff from the ADA list was deliberately indifferent to a serious risk of harm to Plaintiff. To the contrary, while a DPPV from 2005 assessed Plaintiff DPM status for mobility impairment (Doc. 1, p. 28), this was removed in 2007 with notes "Patients condition improves. Patient observed walking greater than 100 yards on level terrain without signs of distress" (*id.*, p. 29). Thus, it cannot be found that Dr. Htay's decision to remove Plaintiff from the ADA list, as Plaintiff generally alleges, so diverged from the opinions of Plaintiff's prior treating physicians so as to amount to deliberate indifference.

Plaintiff's version of factual allegations against Dr. Htay in the FAC need not be accepted as they are deficient and disingenuous. Plaintiff fails to state facts to show that Dr. Htay knew that removing Plaintiff from the ADA list would expose Plaintiff to a substantial risk of harm and ignored that risk.

### 2. **Inmate Appeals**

Plaintiff's only allegations against Dr. Klang, Dr. Youssef, and AC Feliciano pertain to their review and handling of Plaintiff's inmate appeals.

The Due Process Clause protects prisoners from being deprived of liberty without due process of law. *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). To state a cause of action for deprivation of due process, a plaintiff must first establish the existence of a liberty interest for which the protection is sought. "States may under certain circumstances create liberty interests which are protected by the Due Process Clause." *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995). Liberty interests created by state law are generally limited to freedom from restraint which

"imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.*

"[I]nmates lack a separate constitutional entitlement to a specific prison grievance procedure." *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) (no liberty interest in processing of appeals because no entitlement to a specific grievance procedure), citing *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988). "[A prison] grievance procedure is a procedural right only, it does not confer any substantive right upon the inmates." *Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982) *accord Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993); *see also Massey v. Helman*, 259 F.3d 641, 647 (7th Cir. 2001) (existence of grievance procedure confers no liberty interest on prisoner). "Hence, it does not give rise to a protected liberty interest requiring the procedural protections envisioned by the Fourteenth Amendment." *Azeez v. DeRobertis*, 568 F. Supp. at 10; *Spencer v. Moore*, 638 F. Supp. 315, 316 (E.D. Mo. 1986).

Actions in reviewing prisoner's administrative appeals generally cannot serve as the basis for liability under a § 1983 action. *Buckley*, 997 F.2d at 495. The argument that anyone who knows about a violation of the Constitution, and fails to cure it, has violated the Constitution himself is not correct. "Only persons who cause or participate in the violations are responsible. Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation." *Greeno v. Daley*, 414 F.3d 645, 656-57 (7th Cir.2005) *accord George v. Smith*, 507 F.3d 605, 609-10 (7th Cir. 2007); *Reed v. McBride*, 178 F.3d 849, 851-52 (7th Cir.1999); *Vance v. Peters*, 97 F.3d 987, 992-93 (7th Cir.1996).

### a. A/C Feliciano

In his second claim, Plaintiff alleges that, on September 28, 2015, while still at WSP, he submitted an emergency inmate appeal with attached medical records in which Plaintiff raised his health and safety concerns surrounding his then pending transfer to CAL. A/C Feliciano received Plaintiff's appeal, but returned it unfiled and without the attached medical records. Plaintiff alleges this denied "appropriate staff" the opportunity to review Plaintiff's appeal to avoid his transfer to CAL. These allegations fail to state a cognizable claim against A/C Feliciano.

### b. Dr. Klang and Dr. Youssef

Plaintiff alleges that via their rulings on his health-care appeal of Dr. Htay's decision to remove him from the ADA list, Dr. Klang and Dr. Youssef were deliberately indifferent to his serious medical needs.

A defendant may be held liable as a supervisor under § 1983 "if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (quoting *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir.1989)). "[A] plaintiff must show the supervisor breached a duty to plaintiff which was the proximate cause of the injury. The law clearly allows actions against supervisors under section 1983 as long as a sufficient causal connection is present and the plaintiff was deprived under color of law of a federally secured right." *Starr,* supra, (quoting *Redman v. County of San Diego*, 942 F.2d 1435, 1447 (9th Cir. 1991) (internal quotation marks omitted)).

"The requisite causal connection can be established . . . by setting in motion a series of acts by others," *Redman v. County of San Diego*, 942 F.2d 1435, 1447 (9th Cir. 1991) (alteration in original; internal quotation marks omitted), or by "knowingly refus[ing] to terminate a series of acts by others, which [the supervisor] knew or reasonably should have known would cause others to inflict a constitutional injury," *Star*, at 1207-08 (quoting Dubner *v. City & Cnty. of San Francisco*, 266 F.3d 959, 968 (9th Cir.2001)). "A supervisor can be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others." *Id.*, (quoting *Watkins v. City of Oakland*, 145 F.3d 1087, 1093 (9th Cir.1998) (internal alteration and quotation marks omitted)). One very basic prerequisite of this form of liability is a cognizable claim against one of the supervisory defendant's subordinates.

In the second claim, Plaintiff alleges that, on June 3, 2015, while still at WSP, he filed a health-care appeal which was reviewed by Dr. Klang regarding Dr. Htay's medical decision to remove Plaintiff from the ADA list. Plaintiff alleges that Dr. Klang ignored Plaintiff's medical

11

records which showed he had severe spinal damage and denied Plaintiff medical treatment for his spinal condition. This claim is not cognizable as Plaintiff fails to state any factual allegations to show that his medical condition required treatment that Dr. Htay was aware of and refused to provide. Being placed on the ADA list, at least from Plaintiff's allegations, does not imply any need for medical treatment. As previously discussed, Plaintiff's prior medical records were also not of such a nature to equate Dr. Htay's action of taking Plaintiff off the ADA list with deliberate indifference.

Plaintiff also alleges that Dr. Klang disregarded his medical records of mobility problems and agreed with Dr. Htay's diagnosis and removal of Plaintiff from the ADA list. Plaintiff alleges this placed his health and safety at risk because custody staff was allowed to house him in second floor cells, which required him to go up and down the stairs, despite his mobility problems. Plaintiff alleges this caused him to suffer pain and worsened his back condition. However, Plaintiff fails to state any allegations to show that Dr. Htay knew that traversing the stairs would subject Plaintiff to a substantial risk of serious harm and failed to take corrective action, to require Dr. Klang to reverse Dr. Htay's decision to take Plaintiff off the ADA list.

Dr. Youssef provided the Second Level review of Plaintiff's health-care appeal and reviewed Plaintiff's records which documented spurring and arthritis in Plaintiff's lower spine as far back as 2004. Plaintiff alleges that Dr. Youssef disregarded the medical documentation and found that Plaintiff had no mobility impairment to require ADA status (i.e. bottom bunk and bottom floor housing). Plaintiff alleges this amounted to deliberate indifference to Plaintiff's condition since Dr. Youssef was in possession of Plaintiff's documented medical records. These allegations, at most, amount to a difference of opinion between Plaintiff and Dr. Klang and Dr. Youssef -- which is not cognizable. *Estelle*, 429 U.S. at 107.

### 3. Americans with Disabilities Act ("ADA")

As stated in the prior screening order, Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subject to discrimination by such entity." 42 U.S.C. § 12132. Title II applies to the services, programs, and

activities provided for inmates by jails and prisons. *Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 208-13, 118 S.Ct. 1952 (1998); *Simmons v. Navajo Cnty.*, 609 F.3d 1011, 1021-22 (9th Cir. 2010); *Pierce v. Cnty. of Orange*, 526 F.3d 1190, 1214-15 (9th Cir. 2008). "To establish a violation of Title II of the ADA, a plaintiff must show that (1) [he] is a qualified individual with a disability; (2) [he] was excluded from participation in or otherwise discriminated against with regard to a public entity's services, programs, or activities; and (3) such exclusion or discrimination was by reason of [his] disability." *Lovell v. Chandler*, 303 F.3d 1039, 1052 (9th Cir. 2002); *accord Simmons*, 609 F.3d at 1021; *McGary v. City of Portland*, 386 F.3d 1259, 1265 (9th Cir. 2004).

Plaintiff's FAC does not set forth any facts from which to infer he was excluded from or discriminated against with regard to services, programs, or activities by reason of his disability. To the contrary, the incidents giving rise to this lawsuit appear related solely to medical decision made regarding Plaintiff. The treatment, or lack thereof, concerning a medical condition does not provide a basis upon which to impose liability under the ADA. *Simmons*, 609 F.3d at 1022 (citing *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996)). The Court also notes that individual capacity suits against individual prison employees in their personal capacities are precluded under the ADA. *E.g.*, *Heinke v. Cnty. of Tehama Sheriff's Dept.*, No. CVI S-12-2433 LKK/KJN, 2013 WL 3992407, at *7 (E.D. Cal. Aug. 1, 2013); *White v. Smyers*, No. 2:12-cv-2868 MCE AC P, 2012 WL 6518064, at *6 (E.D. Cal. Dec. 13, 2012); *Mosier v. California Dep't of Corr. & Rehab.*, No. 1:11-CV-01034-MJS (PC), 2012 WL 2577524, at *8 (E.D. Cal. Jul. 3, 2012); *Roundtree v. Adams*, No. 1:01-CV-06502 OWW LJO, 2005 WL 3284405, at *8 (E.D.Cal. Dec. 1, 2005) (quoting *Thomas v. Nakatani*, 128 F.Supp.2d 684, 691 (D. Haw. 2000)). Thus, Plaintiff's allegations are not cognizable against any of the Defendants for violation of his rights under the ADA.

## **CONCLUSION**

For the reasons discussed in detail above, Plaintiff's First Amended Complaint fails to state a cognizable claim against any of the named Defendants. Given that Plaintiff has taken disingenuous liberties with the version of factual allegations presented in the FAC, it is futile to

13

allow further amendment and no such leave should be extended.  *Akhtar v. Mesa*, 698 F.3d 1202, 1212-13 (9th Cir. 2012).

Accordingly, it is **HEREBY RECOMMENDED** that this action be dismissed with prejudice.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  **Within twenty-one (21) days** of service of these Findings and Recommendations, Plaintiff may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. Nov. 18, 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **October 18, 2017**          /s/ *Sheila K. Oberto*
UNITED STATES MAGISTRATE JUDGE